The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware corporation,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>JOHN DOE subscriber assigned IP address 24.18.38.215,<br><br>　　　　　　Defendant. | Case Number: 2:17-cv-01729-TSZ<br><br>**PLAINTIFF'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE** |

PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

**FOX ROTHSCHILD LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

1

58175601.v1

## I. INTRODUCTION

The conduct of Strike 3 Holdings, LLC's ("Strike 3" or "Plaintiff") in enforcing its copyrights has been wholly proper. Plaintiff has steadfastly obeyed the strictures of the Court's Order and has acted appropriately throughout its litigation. Plaintiff therefore submits this Memorandum of Points and Authorities, along with the concurrently-filed Declaration of Lincoln Bandlow, in response to the Court's Order to Show Cause to demonstrate how Plaintiff has acted entirely appropriately and there is no basis for the imposition of sanctions.

## II. FACTS

On November 16 and 17, 2017, Strike 3 filed its initial Complaints in the Western District of Washington for copyright infringement against nine Internet subscribers, out of a universe of thousands of infringers and millions nation-wide. *See generally* Dkt. # 1 in each of the nine matters.[1] Shortly after filing these Complaints, Strike 3 filed its Motions for Leave to seek early discovery to serve a limited subpoena on the defendants' Internet Service Providers ("ISP") to identify the subscribers. Dkt. # 4. On January 25 and 26, 2018, eight of the nine Strike 3 cases were transferred to the Honorable Judge Zilly (one case was already assigned to this Court (C17-129)), who in turn issued Minute Orders either amending previous order for leave for early discovery or ruling on pending motions for leave for early discovery, which Minute Orders included several additional conditions and protections pertaining to the early discovery process. Dkt. # 7 & 8. Significant to the Court's present order to show cause, the the Court's Minute Orders stated that "Plaintiff and its attorneys shall not communicate *directly with any defendant John Doe* for any purpose until further order of the Court." Dkt. # 8 at ¶ (1)(c) (emphasis added).

---

[1] For the sake of convenience, this Memorandum uses the convention of citing to the docket in *Strike 3 Holdings, LLC v. John Doe (73.225.38.130)*, C17-1731 (W.D. Wash.) for future citations to the record.

| PLAINTIFF'S RESPONSE TO COURT'S ORDER | **FOX ROTHSCHILD LLP** |
|---|---|
| TO SHOW CAUSE (2:17-cv-01729-TSZ) | 1001 Fourth Avenue, Suite 4500 |
| | Seattle, WA 98154 |
| | (206) 624-3600 |

58175601.v1

As the nine cases progressed, several of the cases were voluntarily dismissed while others continued into litigation. The Court issued another Minute Order on May 29, 2018, which, among other things, directed Strike 3 to show cause "indicating reasons" why it dismissed with prejudice Cases Nos. C17-1729, C17-1730, C17-1733, C17-5952, C17-5954, C17-5955, and C17-5956. Dkt. # 34. Additionally, the May 29 Minute Order directed Strike 3 to show cause "why plaintiff and/or its attorneys should not be sanctioned for failing to comply with the Court's directive not to communicate directly with *any defendant* for any purpose until further order of the Court." *Id. (emphasis added).* As set forth below, the reason why the cases were dismissed was proper and Plaintiff and/or its counsel never communicated directly with any Doe defendant in any of these cases, thus sanctions would be wholly improper.

## III.   LEGAL STANDARD

The awarding of sanctions is something that is approached with great care and caution. "Because of their very potency, inherent powers must be exercised with restraint and discretion" and courts "must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees . . . ." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 50 (1991) (White, J.). "As long as a party receives an appropriate hearing, . . . the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." *Id.* at 57 (citations omitted); *see Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980) ("[S]anctions . . . should not be assessed lightly or without fair notice and an opportunity for a hearing on the record.").

"[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith. Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002), *as amended* (Feb. 20, 2002).

PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

FOX ROTHSCHILD LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

3

58175601.v1

> A district court's use of sanctions is limited by two standards. "First, any sanction must be 'just;' second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982). Sanctions interfering with a litigant's claim or defenses violate due process when imposed merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case. *G–K Properties v. Redevelopment Agency*, 577 F.2d 645, 648 (9th Cir. 1978).

*Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983).

It is clear, however, that there is no bad faith conduct, and therefore sanctions are not appropriate, if a party's reasonable interpretation of ambiguous language results in an incidental violation of a court order. Such conduct is not a "willful" act and sanctioning such conduct would run afoul of due process. *Cf. Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) (citations omitted) ("Where the language of a consent judgment is too vague, it cannot be enforced; to do so would be an invalid exercise of judicial authority."); *id.* (noting that if a party's "action appears to be based on a good faith and reasonable interpretation of the court's order, he should not be held in contempt" for that conduct) (internal quotations and punctuation omitted). As set forth below, there is no basis for an award of sanctions in this matter.

PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

Fox Rothschild LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

4

58175601.v1

## IV. ANALYSIS

### A. Strike 3 Possesses A Valid Copyright Interest And Has A Right to Litigate Its Claims

Strike 3 has acted diligently, with all due deference to the Federal Rules of Civil Procedure and this Court's Orders throughout its litigations. From inception to conclusion – in both the cases that Plaintiff has terminated, and in those cases that remain ongoing – Strike 3 has acted properly. There has been no untoward or bad faith conduct.

#### 1. Strike 3 Has a Right to Enforce Its Copyrights

"The right to petition is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). "In *United States v. Cruikshank*, 2 Otto 542, 92 U.S. 542, 23 L.Ed. 588 (1876), the Court declared that this right is implicit in '[t]he very idea of government, republican in form.'" *Id.; see Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934–35 (9th Cir. 2006) (finding "where the underlying litigation fell within the protection of the Petition Clause, [including "conduct incidental to the prosecution of the suit"], such incidental conduct would also be protected" by *Noerr-Pennington* immunity) (citing *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528–29 (9th Cir. 1991)).

As courts have readily found in similar matters, Strike 3 "certainly has the right to protect its copyright, assuming it owns a protectable copyrighted work, by bringing infringement actions against those it believes engaged in infringing conduct." *Malibu Media, LLC v. John Doe,* 2016 WL 1242687, *3 (S.D. Ohio March 30, 2016) (quoting *Malibu Media, LLC v. Does 1-28*, 295 F.R.D. 527, 535 (M.D. Fla. 2012)). Thus, Strike 3 "has a constitutional right to file a lawsuit and engage in discovery to determine whether a defendant or someone using a defendant's IP address infringed on its protected works." *Malibu Media, LLC v. Maness*, No. CV 12-01873-RBJ-MEH, 2012 WL 7848837, at *6 (D. Colo. Dec. 4, 2012), *report and recommendation adopted*, No. CV 12-01873-RBJ, 2013 WL 1397275 (D. Colo. Apr. 5,

PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

FOX ROTHSCHILD LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

5

58175601.v1

2013). Plaintiff's "right to use judicial and pre-litigation procedures to resolve purported copyright disputes is protected activity." *Mercer Publ'g, Inc. v. Smart Cookie Ink, LLC*, No. CV 12-0188-JLR, 2012 WL 12863934, at *4 (W.D. Wash. July 25, 2012) (citing *Sosa*, 437 F.3d at 940); *Primetime 24 Joint Venture v. National Broadcasting, Co., Inc.,* 219 F.3d 92, 100 (2d Cir. 2000) ("Litigation, including good faith litigation to protect a valid copyright, therefore falls within the protection of the *Noerr-Pennington* doctrine."). Moreover, although "it is true that [Plaintiff] may not ultimately prevail, even 'unsuccessful but reasonably based suits advance some First Amendment interests.'" *Mercer Publ'g*, No. CV 12-0188-JLR, 2012 WL 12863934 at *4 (citation omitted).

In addition to courts routinely holding that actions such as these lawsuits are entirely appropriate, the Copyright Office has taken the unequivocal position that "using peer-to-peer networks to copy or distribute copyrighted works without permission infringes the exclusive rights of reproduction and/or distribution." *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 968 n.8 (N.D. Tex. 2006) (citing *Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks: Hearing Before the Committee on the Judiciary*, 108th Cong. (2003) (statement of Marybeth Peters, Register of Copyrights)). It is beyond dispute that BitTorrent, a peer-to-peer system, continues to afflict copyright holders such as Plaintiff. It has prompted courts to note that "[g]iven the substantial federal policy underlying copyright law, it would be a travesty to let technology overtake the legal protection of that policy." *Malibu Media LLC v. John Does 1-12*, No. CV 12-1342, 2012 WL 5928528, at *2 (C.D. Ill. Nov. 26, 2012). "In this area of human creativity, there is the greatest likelihood of massive infringement given the ever increasing use of the Internet to download digital media. Paradoxically, the protections provided to these copyright holders by the Copyright Act would evaporate, unless copyright holders are permitted to engage in this discovery." W. *Coast Prods., Inc. v. Does 1-1,434*, No. CV 11-55 (JEB/JMF), 2012 WL 10132002, at *4 (D.D.C. Aug. 6, 2012). Strike 3,

PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

FOX ROTHSCHILD LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

6

58175601.v1

as a result of this concern, brings this litigation, and similar litigation across the country, to stem mass piracy and distribution of its works and to seek compensation for loss of sales.

### 2. Strike 3's Conduct in this Litigation Has Been Wholly Proper

These lawsuits are entirely proper when brought by a company, like Strike 3, that "*is an actual producer of adult films* and owns valid copyrights, registered with the United States Copyright Office, in its works." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 780–81 (E.D. Pa. 2013) (emphasis supplied). "The fact that a plaintiff may pursue numerous justifiable claims does not by dint of number[2] convert any of them into an abusive claim." *BWP Media USA Inc. v. Death Adders Inc.*, No. CV 13-4435 (ENV), 2015 WL 13653968, at *2 (E.D.N.Y. Apr. 6, 2015).

Strike 3 is not just the creator of the works-in-suit; it continues to create new motion pictures. "Proceeds [that Strike 3 receives] from settlements go back into making [the]

---

[2] Judge Kennelly provides a fitting analogy in *Malibu Media, LLC v. Doe*, No. CV 13-3648, 2014 WL 2581168 (N.D. Ill. June 9, 2014):

> It is certainly true that Malibu has filed a very large number of infringement suits in this district and in others. But that is what the holders of intellectual property rights do when they are faced with mass infringement. Courts in this district and elsewhere frequently get, for example, lawsuits by trademark owners against multiple websites that sell counterfeited products bearing the trademark owners' marks. By way of example, a review of the index of this district's filings reflects that Coach, Inc. which produces handbags, accessories, footwear, clothing, etc. bearing the company's trademarks, has filed 57 lawsuits in this district alone within the past four years, many of them naming dozens and indeed hundreds of entities as defendants.
>
> \* \* \*
>
> As best as the Court can determine, not one of these has led to criticism of the intellectual property right holder for misusing its trademark, let alone to dismissal of a case for that reason. Presumably the reason is that although cases involving the doctrine of copyright misuse refer to suing on a copyright "hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively," *Assessment Techs. of WI*, 350 F.3d at 647, the predicate for a misuse defense is an attempt to use the copyright monopoly to control something the monopoly does not protect. That element is missing from Doe's affirmative defense. *The Court is hard-pressed to see why Malibu Media's large-volume litigation should be treated differently from that of Coach or other intellectual property rights holders simply because Malibu's intellectual property rights involve pornographic films.*

*Id.* at *2 (emphasis supplied) (striking copyright misuse defense).

PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

FOX ROTHSCHILD LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

7

58175601.v1

company whole, including investing in better pay for artists and performers, better quality productions, and creating jobs." *See* Declaration of Greg Lansky ("Lansky Decl.") at ¶ 32.[3] This is the purpose of copyright law: "To promote the progress of science and useful arts" modernly referred to as promoting "creative works." U.S. CONST. Art. 1, § 8, cl. 8; *see Fogerty v. Fantasy*, Inc., 510 U.S. 517, 526–27 (1994) (quoting *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 156 (1975) ("The immediate effect of our copyright law is to secure a fair return for an 'author's' creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good."). Indeed, Strike 3's motion pictures support an expanding workforce, including editors and producers, all contributing to the creative marketplace. *See* Lansky Decl. at ¶ 14. Additionally, Strike 3 makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses, and not from litigation. *Id.* at ¶ 32.

Plaintiff also has a good faith basis for bringing its claims. Pursuant to Federal Rules of Civil Procedure 11(b), Strike 3's "legal contentions are warranted by existing law" and "the factual contentions have evidentiary support or, . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." *Id.* 11(b)(2)–(3). Strike 3's pleadings lay out its prima facia case for copyright infringement as well as its evidentiary basis for pursuing a Doe Defendant specifically. *See generally* Dkt. # 1 & 4. Courts across the country have likewise found good cause to grant Strike 3 leave to pursue its claims.[4] None of these courts have found Strike 3's conduct improper. Here, "there simply is no evidence in this case of the kind of bad faith that warrants sanctions under section 1927 or the Court's inherent authority." *Elf-man, LLC v. Lamberson*, No. CV 13-0395-TOR, 2014 WL 11513119, at *5

---

[3] A copy of Mr. Lansky's Declaration is being filed herewith for the Court's convenience.
[4] *See e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 (D. Conn. Nov. 1, 2017); *Strike 3 Holdings, LLC v. Doe*, No. CV 317-02316G-PC-KSC, 2018 WL 324264 (S.D. Cal. Jan. 5, 2018); *Strike 3 Holdings, LLC v. Doe*, No. CV 17-2347 (TJK), 2018 WL 385418 (D.D.C. Jan. 11, 2018); *Strike 3 Holdings, LLC v. Doe*, No. CV 17-9654 (AT)(KNF), 2018 WL 1737217 (S.D.N.Y. Mar. 12, 2018); *Strike 3 Holdings, LLC v. Doe*, No. CV 18-777 (JRT/BRT), 2018 WL 2078707 (D. Minn. May 4, 2018).

PLAINTIFF'S RESPONSE TO COURT'S ORDER　　　　　　　　　　　　FOX ROTHSCHILD LLP
TO SHOW CAUSE (2:17-cv-01729-TSZ)　　　　　　　　　　　　　　　1001 Fourth Avenue, Suite 4500
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Seattle, WA 98154
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(206) 624-3600

58175601.v1

(E.D. Wash. Oct. 31, 2014) (refusing to impute bad acts from other parties to plaintiff in that case).

### B. Plaintiff Diligently Obeyed the Court's Order

Strike 3 has not attempted to hide the ball on how it uses early discovery to further its cases. Indeed, in Plaintiff's Motion for Leave for Early Discovery, Strike 3 expressly notes that if the motion is granted to allow early discovery, "Plaintiff will only use this order to the extent necessary to identify Doe Defendant. *It will not initiate ex parte communications with the ISP subscriber beyond serving him or her with the suit*. That is, Plaintiff will not, nor does it desire to, send demand letters to Defendant and will hold no communications with Defendant unless Defendant initiates negotiations, or this court orders any such communications, until after a Rule 26(f) conference has taken place." Dkt. # 4 at p. 9 n.4 (emphasis added). In addition to these self-imposed restrictions, the Court's Order here placed greater restrictions on Strike 3's self-imposed moratorium by, *inter alia*, denying Plaintiff the ability to review and uncover Doe Defendant's name and address and further directing that "Plaintiff and its attorneys shall not communicate *directly with any defendant John Doe* for any purpose until further order of the Court." Dkt. # 8, at ¶(1)(c) (emphasis added). Strike 3 has dutifully obeyed this Order.

To be sure, Strike 3 has settled five cases in this District: Case Nos. C17-1729, C17-1730, C17-1733, C17-5952, and C17-5956. These settlements, however, **were negotiated with and through opposing counsel only, and not directly with any of the Doe defendants**. *Cf. McKelvey v. Am. Seafoods*, No. CV 99-2108-L, 2000 WL 33179292, at *1 (W.D. Wash. Apr. 7, 2000) (finding a party "had the benefit of his counsel's advice and does not allege that he was in any way defrauded or confused about the terms of the agreement, the claims he was compromising, or the effect of the settlement"). This complies with the Court's Order that Plaintiff "not communicate directly with any defendant John Doe . . . ." Dkt. # 8, at ¶ (1)(c).[5]

---

[5] As set forth above, Plaintiff itself had already agreed when it sought leave to conduct discovery on the ISP that Plaintiff would not use the information it received from the ISP to contact any Doe Defendant, thus the Court's

PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

**FOX ROTHSCHILD LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

9

58175601.v1

Indeed, not only was there no communication made by Plaintiff and/or its counsel to any Doe Defendant, but on the *one* occasion in which a Doe defendant made an unsolicited contact with Plaintiff's counsel, Plaintiff's counsel did *not* respond to that communication. In C17-1730, after serving its third-party subpoena pursuant to the Court's Order, Strike 3 was contacted via email by the Doe Defendant on March 9, 2018. *See* Declaration of Lincoln Bandlow ("LB Decl."), at ¶ 9. Plaintiff did not respond to the Doe Defendant's communication. *Id.* It was not until *after* counsel for that Doe Defendant filed a notice of appearance on March 23, and later reached out to Strike 3 to discuss the matter[6] that negotiations commenced. *Id.*

Indeed, in C17-1731, where the parties are engaged in rigorous motion practice, the parties have jointly agreed to and filed a Stipulated Motion for a Protective Order,[7] requiring Strike 3 and opposing counsel to communicate and coordinate before filing. Dkt. # 17. The proposed motion was filed on February 16, 2018. *Id.* This stipulated motion was filed *before* negotiations began with any other defendants' counsels in other cases in this District. In response to the Stipulated Motion, the Court entered a Minute Order and simply "reiterate[d]" the Court's Order from January 25, that Plaintiff must keep confidential any of Doe Defendant's identifying information unless ordered otherwise by the Court. Dkt. # 20. What the Court did *not* do is say that Plaintiff should not communicate *with counsel* for the Doe Defendant in that

---

Order simply added the additional prohibition of having any interaction with a Doe Defendant even if that Doe Defendant independently reached out to Plaintiff. As set forth below, Plaintiff followed that prohibition to the letter.

[6] Although Plaintiff and its counsel are virtually certain that this Court cannot have meant by its Order that Plaintiff was not to have any communications with not only Doe Defendants, but any counsel representing such defendants, if such a requirement was in place, then counsel for the Doe Defendants' conduct here approaches a form of entrapment. Strike 3 does not believe counsel for these Doe Defendants had any such ulterior motive or anything else improper in mind when they contacted counsel for Plaintiff, rather, they were simply seeking to obtain a prompt resolution to the matters.

[7] Except for C17-1733, which settled before this Court entered its Amended Order. It is therefore irrelevant to this discussion.

| | |
|---|---|
| PLAINTIFF'S RESPONSE TO COURT'S ORDER<br>TO SHOW CAUSE (2:17-cv-01729-TSZ) | FOX ROTHSCHILD LLP<br>1001 Fourth Avenue, Suite 4500<br>Seattle, WA 98154<br>(206) 624-3600 |

58175601.v1

matter. That was not surprising to Plaintiff that the Court did not so order because Plaintiff did not think the Court's Order at issue here had any such prohibition.

Thus, it appears entirely clear to Plaintiff and its counsel that this Court's Order was an understandable requirement that Plaintiff not communicate directly with any Doe Defendant (based on the concern that is always present in any litigation that undue pressure could be applied to an unrepresented party that does not have the benefit of advice of counsel). What was equally clear was that the Court's Order was not – in words or in spirit – a requirement that Plaintiff not communicate with any *counsel* for a Doe Defendant (particularly, as was the situation in every case in this District, where it was the counsel for the Doe Defendant that initiated the communication with Plaintiff). Certainly, even if this interpretation of the Court's Order is somehow incorrect, it was an extremely reasonable interpretation of the Court's Order. Assuming Plaintiff's interpretation was correct, since Strike 3 complied entirely with the Court's Order, Plaintiff should not be sanctioned.

To the extent the Court's Order to Show Cause inquires whether Strike 3 should be sanctioned for communicating with opposing counsel, Plaintiff submits that the Court's Order cannot reasonably be read to have such a requirement or, at best, is highly ambiguous as to such a requirement. It is contrary to due process to sanction a party for the accidental violation of an ambiguous court order. *See e.g.*, *Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.*, 846 F.3d 391, 415 (D.C. Cir.), *cert. denied sub nom. Muslim Am. Soc'y Freedom Found. v. D.C.*, 138 S. Ct. 334, 199 L. Ed. 2d 213 (2017) ("We acknowledge the district courts' prerogative to sanction parties for noncompliance with their orders, but we must vacate the sanctions here [made under Fed. R. Civ. P. 16(f)(2)] because the underlying order was ambiguous . . . ."); *Ashlodge, Ltd. v. Hauser*, 163 F.3d 681, 684 (2d Cir. 1998), *overruled on other grounds*, *New Pac. Overseas Grp. (U.S.A.) Inc. v. Excal Int'l Dev. Corp.*, 252 F.3d 667, 669 (2d Cir. 2001) ("To sustain sanctions under Rule 16(f), an order must
PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

FOX ROTHSCHILD LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

11

58175601.v1

be unambiguous . . . ."). Thus, because Strike 3 only communicated with defendants' counsels in accordance with the Court's Order, or *arguendo*, because the Court's Order was ambiguous, Strike 3 has not conducted itself in bad faith and should not be sanctioned.

### C. Plaintiff Has An Absolute Right to Settle and Dismiss Cases Pursuant to the Federal Rules of Civil Procedure

Because of the nature of this litigation and the extreme limits imposed by the Court's Order, Strike 3 essentially knows nothing about the defendants' identities in these matters. The litigation posture is unique here; and is perhaps the closet approximation the judiciary can craft to the Rawlsian thought experiment of "Original Position" in which actors with competing interests are situated behind a "veil of ignorance" where, armed with understandings of basic structure of society, such as the law, parties would rationally agree to "pure procedural justice."[8] It is informative then to review the due process jurisprudence of the Federal Rules of Civil Procedure and how it shapes Strike 3's conduct.

#### 1. The Federal Rules of Civil Procedure Encourage Settlements and Conclusion of Claims

The Federal Rules of Civil Procedure "*should be construed, administered, and employed by the court and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis supplied). "[A] court *should dispose of a case at the first opportunity which is appropriate under the rules* and in accord with the rights of the parties." *United States v. U.S. Gypsum Co.*, 67 F. Supp. 397, 417–18 (D.D.C 1946), *rev'd and remanded on other grounds*, 333 U.S. 364 (1948) (emphasis supplied). "The whole tenor

---

[8] *See generally* John Rawls, A THEORY OF JUSTICE, 73, 118 (1971) ("The intuitive idea of justice as fairness is to think of the first principles of justice as themselves the object of an original agreement in a suitably defined initial situation. These principles are those which rational persons concerned to advance their interests would accept in this position of equality to settle the basic terms of their association."). There is an asymmetry in Strike 3's cases because defense counsel knows the defendant's identity and hence facts about his or her liability; Plaintiff does not. *See also* Richard A. Posner, ECONOMIC ANALYSIS OF LAW 557 (4th ed. 1992) ("Each party's best settlement offer [depends] on how he expects to fare in litigation.").

PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

FOX ROTHSCHILD LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

12

58175601.v1

of the Federal Rules of Civil Procedure is . . . to bring [litigation] to an end." *Deem v. Aero Mayflower Transit Co.*, 24 F.R.D. 16, 18 (S.D. Cal. 1959).

The Rules encourage dismissal when the judicial process has run its course. "Plaintiff, like all litigants may decide to dismiss the action or proceed with discovery." *Malibu Media, LLC v. Maness*, No. CV 12-01873-RBJ-MEH, 2012 WL 7848837, at *6 (D. Colo. Dec. 4, 2012), *report and recommendation adopted*, No. CV 12-01873-RBJ, 2013 WL 1397275 (D. Colo. Apr. 5, 2013). Rule 41(a)(1) freely permits a plaintiff to voluntarily dismiss an action without a court order where defendant has not filed an answer or a motion for summary judgment. Fed. R. Civ. P. 41(a)(1). "The purpose of the rule is to permit a plaintiff to dismiss an action without prejudice so long as the defendant will not be prejudiced, or unfairly affected by dismissal." *Stevedoring Servs. of Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir. 1989) (citations omitted) (punctuations edited); *see also Ockert v. Union Barge Line Corp.*, 190 F.2d 303, 304 (3d Cir. 1951) ("They are to give a man a right to take his case out of court when no one else will be prejudiced by his doing so.").

The Rules also encourage settlement of meritorious claims. "Unquestionably the settlement of litigation and the compromise of disputed claims are favored by the courts." *Lewis v. S. S. Baune*, 534 F.2d 1115, 1122 (5th Cir. 1976) (collecting cases). It is axiomatic in civil cases that the parties have a right to settle. *See Mercantile Tr. Co. v. Hensey*, 27 App. D.C. 210, 215 (D.C. Cir. 1906), *aff'd*, 205 U.S. 298 (1907) ("Where differences arise between parties, it is their right to settle such differences between themselves . . ."); *see also Marquam v. Vachon*, 7 F.2d 607, 608 (9th Cir. 1925) (noting a party has "a right to settle and compromise the actions").

Rule 68 enshrines this principle in the Federal Rules. "The plain purpose of Rule 68 is to encourage settlement *and avoid litigation*." *Marek v. Chesny*, 473 U.S. 1, 5 (1985) (Burger, J.) (emphasis supplied). "Rule 68's policy of encouraging settlements is neutral, favoring

PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

FOX ROTHSCHILD LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

13

58175601.v1

neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits." *Id.* at 10. "In all litigation, the adverse consequences of potential defeat provide both parties with an incentive to settle in advance of trial." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981) (Stevens, J.).

### 2. Strike 3's Election of Dismissal or Settlement Comports with the Federal Rules of Civil Procedure

As has been found in cases across the nation involving mass BitTorrent copyright infringement, there is nothing unusual about parties settling.[9] "There are any number of reasons free from coercion that a defendant may choose to settle, including culpability." *Malibu Media, LLC v. Doe*, 2015 U.S. Dist. LEXIS 108934, *3 n.4 (S.D.N.Y. Aug. 18, 2015). The timing of these settlements is generally immaterial. Indeed, "courts have concluded that attempts to negotiate a settlement *before* filing a copyright infringement lawsuit are not evidence of abuse of process." *Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp. 3d 1356 (D. Kan. 2018). The sooner the parties have briefed their positions, the sooner they can resolve their dispute, and free up courts' resources. Thus, the gravity from the policies embedding in the Federal Rules and the common law creates a strong pull for parties to dismiss or settle their claims when genuine disputes no longer arise.

This is what motivates Strike 3's willingness to settle and conclude cases when appropriate. To wit, Strike 3's claims are meritorious and its evidence is strong and credible. Yet because Plaintiff has conducted extensive pre-litigation discovery into the BitTorrent

---

[9] *TCYK, LLC v. Does*, No. CV 13- 03496-WYD-MEH, 2014 WL 1515586, at *3 (D. Colo. Apr. 16, 2014) ("Plaintiff shares the same right as all litigants to settle or dismiss its claims before engaging in discovery and prior to the filing of any dispositive motions."); *Malibu Media, LLC v. Reynolds*, No. CV 12-6672, 2013 WL 870618, at *7 (N.D. Ill. Mar. 7, 2013) (citations omitted) ("[T]he fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners. It would be unfair to deprive owners of copyrights to pornographic material the same protections as owners of other copyrighted work."); *AF Holdings LLC v. Does 1-1,058*, 83 Fed. R. Serv. 3d 10 (D.D.C. 2012) ("That the plaintiff chooses, after obtaining identifying information, to pursue settlement or to drop its claims altogether is of no consequence to the Court. The plaintiff has sufficiently pled allegations of copyright infringement and has a right to name or decline to assert claims against defendants whose identities and other relevant circumstances become known to the plaintiff.").

| | |
|---|---|
| PLAINTIFF'S RESPONSE TO COURT'S ORDER<br>TO SHOW CAUSE (2:17-cv-01729-TSZ) | FOX ROTHSCHILD LLP<br>1001 Fourth Avenue, Suite 4500<br>Seattle, WA 98154<br>(206) 624-3600 |

58175601.v1

infringements, neither Strike 3 nor defendants benefit significantly from protracted discovery. No doubt, "[t]he desire to avoid expensive litigation is a justifiable reason to dismiss this action and other courts faced with this reason have so found." *Malibu Media, LLC v. Ricupero*, No. CV 2:14-821, 2016 WL 8201931, at *4 (S.D. Ohio May 13, 2016), *aff'd*, 705 F. App'x 402 (6th Cir. 2017) (citing *Malibu Media v. Shekoski*, 2015 WL 2353117 (E.D. Mich. May 15, 2015)). Especially when defendants acknowledge liability early on, prompt settlements are particularly appropriate. Indeed, as set forth in the LB Decl., a number of the matters at issue here settled after early admissions of liability acknowledged by counsel for the Doe Defendant. *See* LB Decl., ¶¶ 11, 13. On the other side of the coin, when an ISP cannot identify a subscriber, or where a Doe Defendant cannot be located to effect service, a swift dismissal is equally warranted. *See* LB Decl., at ¶ 12. As a result, Strike 3's proclivity to dismiss or settle claims early is proper.

Finally, to be clear to the Court, Plaintiff must address the elephant in the room, and that elephant's name is Prenda. That was a big, dumb, malicious animal from years ago that unfortunately now poses the risk of trampling the rights of all the legitimate content creators, such as Plaintiff, who have been forced to seek court intervention to address the tidal wave of internet infringement that puts content creators at risk of drowning in a sea of theft. The Court should rest assured: Plaintiff and its counsel are the anti-Prenda. Plaintiff is a legitimate producer, creator and owner of its own content – it does not acquire old films for the purpose of seeding the internet to entice infringement and then sue people. Plaintiff does not have a litigation business model, its main source of income is the sale/licensing of its content. Plaintiff does not *ever* make any contact with Doe Defendants (unless initiated by them or their counsel – and, under this Court's Order, Plaintiff does not communicate with Does at all in these matters). Plaintiff does not threaten to "out" defendants for their content choices and *always* will agree to protective orders maintaining anonymity if requested. Plaintiff is represented by a

PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

**FOX ROTHSCHILD LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

58175601.v1

national law firm with an expertise in intellectual property.  Plaintiff carefully, ethically and at great expense and effort does one thing:  it brings actions against people who appear clearly to be rampantly stealing Plaintiff's content.  Under appropriate circumstances and based on extensive investigation, Plaintiff will dismiss, settle or litigate, based on the facts of each case. That is precisely what it has done in all the Seattle Strike 3 Cases and Plaintiff has acted wholly proper in that pursuit.

## V. CONCLUSION

For the foregoing reasons, Strike 3's conduct in this litigation has been appropriate and it has diligently obeyed the Court' Order.  As a result, Plaintiff respectfully requests the Court discharge Strike 3's obligation to show cause pursuant to the Minute Order and not sanction Plaintiff or its counsel.

DATED this 8th day of June, 2018

FOX ROTHSCHILD LLP

 *s/ Bryan J. Case*
Bryan J. Case, WSBA #41781

*Attorneys for Plaintiff*

PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

FOX ROTHSCHILD LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

16

58175601.v1

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:   s/ *Bryan J. Case*
      Bryan J. Case

PLAINTIFF'S RESPONSE TO COURT'S ORDER
TO SHOW CAUSE (2:17-cv-01729-TSZ)

**FOX ROTHSCHILD LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
(206) 624-3600

17

58175601.v1